IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:01-CR-109-D

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| REGGIE BLOUNT, ) | |
| ) | |
| Defendant. ) | |

On November 30, 2021, Reggie Blount ("Blount" or "defendant") moved for a sentence reduction under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 108] and filed a memorandum and documents in support [D.E. 107]. On December 17, 2021, the government responded in opposition [D.E. 112]. As explained below, the court denies Blount's motion.

I.

On March 20, 2002, pursuant to a written plea agreement, Blount pleaded guilty to armed bank robbery (counts one, three, five, seven, ten, and twelve of the superseding indictment and counts one and two of the criminal information), and brandishing a firearm during and in relation to a crime of violence (counts two and eleven of the superseding indictment). See [D.E. 30, 48, 50]. On June 25, 2002, the court held Blount's sentencing hearing and adopted the facts set forth in the Presentence Investigation Report ("PSR"). See Fed. R. Crim. P. 32(i)(3)(A)–(B); PSR [D.E. 96]; [D.E. 57]; Sentencing Tr. [D.E. 62] 20. After resolving Blount's objections, the court calculated Blount's total offense level to be 36, his criminal history category to be III, and his guideline range to be 235 to 293 months' imprisonment on the armed bank robbery counts, 84 months' consecutive

imprisonment on count two of the superseding indictment, and 300 months' consecutive imprisonment on count eleven of the superseding indictment. See PSR ¶¶ 148–51; Sentencing Tr. at 7. After considering the arguments of counsel and all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Blount to 240 months' imprisonment on the armed bank robbery counts, 84 months' consecutive imprisonment on count two of the superseding indictment, and 300 months' consecutive imprisonment on count eleven of the superseding indictment, for a total term of 624 months' imprisonment. See id. at 20; [D.E. 57]. Blount did not appeal.

On June 8, 2012, Blount filed a motion to vacate, correct, or set aside his sentence under 28 U.S.C. § 2255. See [D.E. 68]. On March 23, 2015, the court denied Blount's section 2255 motion as untimely. See [D.E. 91]. On April 5, 2019, Blount moved for a sentence reduction under section 403 of the First Step Act, which eliminated stacked sentences under 18 U.S.C. § 924(c) when a defendant did not have a prior section 924(c) conviction. See [D.E. 100]. On April 29, 2020, the court denied Blount's motion, reasoning section 403 of the First Step Act did not operate retroactively. See [D.E. 105].

On November 30, 2021, Blount moved for compassionate release [D.E. 108], and the case was reassigned to the undersigned. The government opposes Blount's motion. See [D.E. 112].

II.

On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such

2

a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine that the defendant is not a danger to the safety of another person or the community. Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements" of the United States Sentencing Commission (the "Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including: (A) serious medical conditions of the defendant, (B) advanced age of the defendant when coupled with a serious deterioration in physical and mental health due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1.[1] Application note 2 states

---

[1] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

    (A) Medical Condition of the Defendant.—

    (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor

3

that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, the fact "that an extraordinary and compelling reason reasonably could have been known or

---

>
>
> cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>
> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.—
>
> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

4

anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. High, 997 F.3d 181, 186 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330–31 (4th Cir.), cert. denied, 142 S. Ct. 383 (2021); United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Rather, "[section] 1B1.13 only applies when a request for compassionate release is made upon motion of the Director of the [BOP]." Kibble, 992 F.3d at 330–31. Nevertheless, section 1B1.13 provides informative policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See High, 997 F.3d at 186; McCoy, 981 F.3d at 284. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., McCoy, 981 F.3d at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000, 1007–08 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

On May 29, 2020, Blount applied to the warden for compassionate release. See [D.E. 107-4] 2–13. On July 30, 2020, the warden denied Blount's request. See [D.E. 107-4] 1. Therefore, Blount has met the exhaustion requirement, and the court addresses his motion on the merits. Cf. United

5

States v. Muhammad, 16 F.4th. 126, 130 (4th Cir. 2021).

Blount does not seek release from incarceration but asks the court to reduce his 300-month sentence on count eleven of the superseding indictment to 84 months. When the court sentenced Blount on June 25, 2002, section 924(c) imposed an 84-month mandatory minimum consecutive sentence for brandishing a firearm during a crime of violence and a 300-month mandatory minimum consecutive sentence for every subsequent conviction of the same offense. See McCoy, 981 F.3d at 275. A section 924(c) conviction was a subsequent conviction even if a defendant obtained the first section 924(c) conviction in the same case. See id. On counts two and eleven, Blount pleaded guilty to brandishing a firearm during and in relation to a crime of violence, triggering the 300-month mandatory minimum on count eleven. See [D.E. 57].

In the First Step Act, Congress changed the law so that a section 924(c) conviction is only a subsequent conviction if the first section 924(c) conviction "arises from a separate case and already has become final." McCoy, 981 F.3d at 275 (quotation omitted). Thus, section 924(c) "no longer applies to multiple § 924(c) convictions obtained in a single prosecution." United States v. Jordan, 952 F.3d 160, 171 (4th Cir. 2020); see McCoy, 981 F.3d at 275. Section 403(b) of the First Step Act provides that this change to section 924(c) "shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment." § 403(b), 132 Stat. at 5222. The court, however, sentenced Blount in June 2002, long before Congress enacted the First Step Act.

Stacked sentences under section 924(c) may form the basis for a successful motion under section 3582(c)(1)(A). In McCoy, the Fourth Circuit affirmed two cases consolidated on appeal in which district courts granted motions for compassionate release based on stacked section 924(c) convictions. McCoy, 981 F.3d at 277–79. In McCoy, one defendant had served 17 years of his

6

sentence and three defendants had each served approximately 25 years. See id. One defendant pleaded guilty to and three defendants were convicted by a jury of relevant robberies and related gun offenses. See id. The district courts granted compassionate release, reducing the defendants' sentences to time served because the courts determined that the defendants' sentences were greater than necessary to achieve the purposes of the relevant section 3553(a) factors. See id. Moreover, the district courts in those cases intimated that if the court had sentenced those defendants under today's section 924(c) regime, the defendants would likely have been close to completing or have already completed their sentences. See id.[2]

Here, Blount does not seek release from incarceration but rather seeks a sentence reduction. See [D.E. 107] 15. Blount has served approximately 20 years of his sentence of his approximately 52-year sentence, similar to the time the defendants in McCoy had already served when the district courts granted their First Step Act motions. But in McCoy, the time defendants had already served was close to if not greater than the sentences the district courts said they would have received under the current section 294(c) standard. Assuming without deciding that Blount's calculation is correct, Blount would have received at least a 34-year sentence under the current standard and would not be close to completing his sentence.[3] Furthermore, although the district courts in McCoy expressed

---

[2] In McCoy, one defendant had served 17 years of a sentence of just over 35 years. See McCoy, 981 F.3d at 277. Had the defendant been sentenced today, the district court stated the sentence would have been more than 200 months (i.e., more than 16.5 years) shorter. See id. at 278. The other defendants had served approximately 25 years of their sentences of between 52 and 53 years. See id. at 278. Had they been sentenced today, the district court stated their sentences would have been 30 years shorter. See id. at 279.

[3] Blount contends he would have received 168 months' consecutive imprisonment for his two section 924(c) convictions under the current standard. See [D.E. 107] 7. That, combined with his 240-month sentence for the armed bank robbery counts, yields a 408-month (34-year) sentence. See id. at 13.

7

concern over the length of the sentences they imposed, the same is not true here. See McKoy, 981 F.3d at 278, 285. The court expressed no such concern about Blount's case. If anything, the court signaled at Blount's sentencing hearing that it thought Blount's sentence could have been higher because the court thought (but it did not impose) a 5-level enhancement, instead of a 2-level enhancement, was appropriate for Blount's leadership role in the armed bank robberies. See Sentencing Tr. at 5. Although the court noted that Blount "face[d] an awfully lengthy sentence," the court also stated that Blount was "the unquestioned most – well, prolific bank robber I've had in 15 years on this bench" and to be "the leader of the robbing of some eight banks throughout Eastern North Carolina and even in the Middle District with firearms and the like is exceedingly unusual." Id. at 8. The court also noted that "the robberies themselves appeared to grow increasingly violent as time went along." Id. at 9. Moreover, the powerful victim allocution at Blount's sentencing hearing starkly illustrated the terror and trauma he and his crew inflicted on the employees of the banks. See id. at 13–18. Thus, unlike the district courts in McCoy, the court expressed no concern about Blount receiving a sentence greater than necessary.

Another reason supports declining to reduce Blount's sentence. Blount's sentence was the result of a carefully crafted plea agreement. Under that agreement, Blount pleaded guilty to eight counts of armed robbery and two section 924(c) counts. In exchange, the government agreed to dismiss four section 924(c) counts and one count of conspiracy to commit armed bank robbery. See [D.E. 30, 50, 57]. Each dismissed section 924(c) count would have exposed Blount to an additional, consecutive 300-month sentence when he was originally sentenced or an additional, consecutive 84-month sentence under the current standard. Blount received the benefit of his plea bargain at his original sentencing and received a substantially lower sentence than he might have otherwise

8

Case 5:01-cr-00109-D    Document 114    Filed 03/21/22    Page 8 of 11

received, under either the 2002 or current standard.[4] See United States v. Plauche, 744 F. App'x 166, 167 (4th Cir. 2018) (per curiam) (unpublished); United States v. Ringling, 988 F.2d 504, 506 (4th Cir. 1993) ("Plea bargains rest on contractual principles, and each party should receive the benefit of its bargain."). And, as discussed below, the court has examined the section 3553(a) factors, and they weigh against reducing Blount's sentence.

Blount is incarcerated for ten counts related to a string of armed robberies Blount committed with several co-conspirators. In 2000 and 2001, Blount and his co-conspirators robbed at gun point numerous banks in North Carolina and stole hundreds of thousands of dollars. See PSR ¶¶ 9–21; [D.E. 57]. During the robberies, Blount and his crew threatened bank employees with guns and threatened to kill them if the employees did not comply with their orders. See PSR ¶¶ 9–21; Sentencing Tr. at 13–18. At the end of a robbery, Blount and his co-conspirators would lock bank employees inside the bank vault to facilitate Blount and his crew's escape. See PSR ¶¶ 14, 15, 17–19. During one robbery, Blount ordered a co-conspirator to pepper spray a bank employee in the face just before shutting the vault's door to lock the employees in. See id. ¶ 14. Blount was the leader of many of these horrific crimes and was responsible for recruiting other participants, determining which banks to rob, supplying weapons to his crew, and dividing up the stolen money after a robbery. See id. ¶¶ 67, 76, 84, 111. As the court noted at Blount's sentencing hearing, the robberies became increasingly violent over time. See Sentencing Tr. at 9. Moreover, Blount had a terrible and violent criminal record before committing the armed bank robberies, including robbery with a dangerous weapon and assault with intent to murder. See PSR ¶ 33. In that case, Blount was

---

[4] Even under the current standard, six consecutive 84-month terms of imprisonment would result in 504 months' consecutive imprisonment, substantially higher than 384 months' consecutive imprisonment Blount actually received for the two section 924(c) counts to which he pleaded guilty.

convicted of assault with intent to murder after he fired two gunshots at a police officer. See id. Blount has a poor record on supervision and previously had his probation revoked for failure to report and absconding from supervision. See id. Blount committed the armed bank robberies for which he is federally incarcerated while on probation. See id. ¶ 36.

Blount has made some positive efforts while federally incarcerated. See [D.E. 107] 12. For example, Blount has earned his GED, completed many hours of courses, including vocational training courses, and obtained a culinary arts certificate from West Virginia University. See id.; [D.E. 107-7, 107-8]. Blount also has maintained employment while incarcerated and has worked in food service, maintenance, recycling, and as an orderly. See [D.E. 107] 12; [D.E. 107-9]. Blount currently works for UNICOR making office furniture, and he has made payments toward his restitution balance. See [D.E. 107] 12; [D.E. 107-9, 107-10]. However, Blount has incurred multiple infractions while federally incarcerated, including for threatening bodily harm (two counts), possessing drugs or alcohol, and possessing a hazardous tool (a cell phone). See [D.E. 107] 12; [D.E. 107-6]. The court views the possession of a cell phone in custody as serious misconduct. Cf. United States v. Melton, 761 F. App'x 171, 172–78 (4th Cir. 2019) (per curiam) (unpublished). Blount committed his most recent infraction in 2020. See [D.E. 107-6].

The court must balance Blount's positive efforts with his extraordinarily serious criminal conduct and horrible criminal history, his mixed performance in federal custody, his poor performance on supervision, the need to punish him, the need to promote respect for the law, the need to protect society, and the need to deter others. Cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 997 F.3d at 187–91; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). The court also has considered Blount's difficult upbringing, his rehabilitative efforts, and his release plan. See [D.E. 107] 9–13.

10

The court recognizes Blount has a supportive family and friends. See [D.E. 107-11]. Having considered the entire record, Blount's mixed performance in federal custody, the section 3553(a) factors, Blount's arguments, the government's persuasive response, the need to punish Blount for his serious criminal behavior, to incapacitate Blount, to promote respect for the law, to deter others, and to protect society, the court denies Blount's motion for a sentence reduction. See, e.g., Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); High, 997 F.3d at 187–91; Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

III.

In sum, the court DENIES defendant's motion for a sentence reduction [D.E. 108].

SO ORDERED. This 21 day of March, 2022.

JAMES C. DEVER III
United States District Judge